UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Criminal No. 10-09-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| NICHOLAS A. RASCHELLA, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the Motion to Suppress [R. 27] filed by Defendant Nicholas A. Raschella. Specifically, this matter is before the Court to address Raschella's request for a *Franks* hearing contained within that motion. [*Id.*] Raschella asks the Court to conduct a *Franks* hearing based on alleged false statements made in the affidavits supporting the search warrants for his medical office and residence. [*Id.*] In its Response [R. 36] to the motion to suppress, the United States argues that Raschella has not made the requisite preliminary showing to merit a *Franks* hearing. The Court agrees. Although the Court will hold a hearing on the other issues and arguments raised in the motion to suppress, no *Franks* testimony will be allowed.

**I.**

The Indictment [R. 1] in this case states that Raschella was a practicing physician licensed to practice medicine in Kentucky and permitted to prescribe narcotics by the Drug Enforcement Administration ("DEA") during all times relevant to the charges levied against him. The Indictment further states that under 21 U.S.C. § 1306.04(a), in order to be effective, a

prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. [R. 1.] An order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Controlled Substances Act, and the person issuing such a prescription shall be subject to the penalties for violations of the provisions of law relating to controlled substances. [*Id.*]

The Indictment against Raschella contains fourteen counts. [*Id.*] Specifically, Counts 1 through 14 charge him with violating 21 U.S.C. § 841(a)(1) by knowingly and intentionally distributing or possessing with intent to distribute controlled substances without a legitimate medical purpose and outside the usual course of medical practice on dates ranging from February 7, 2007, to June 13, 2007. [R. 1.] Count 13 charges Raschella with violating 21 U.S.C. § 843(a)(3) by knowingly and intentionally acquiring Oxycodone, a Schedule II controlled substance, by misrepresentation, fraud, forgery, deception, and subterfuge. [R. 1.] Count 14 charges that Raschella violated the same statute by acquiring Valium and Xanax, Schedule IV controlled substances, by fraud. [*Id.*]

Raschella now challenges the search warrants issued June 12, 2007, that led to evidence potentially relevant to the above-listed charges. *See In the Matter of the Search of Nicholas Raschella Residence*, Case No. 07-6051M (hereinafter *Residence*, 07-6051M); *In the Matter of the Search of Nicholas Raschella Medical Office*, Case No. 07-6052M (hereinafter *Medical Office*, 07-6052M). In the challenge addressed by this Order, Raschella alleges that the affidavits supporting the search warrants contained deliberately false statements or statements which demonstrate a reckless disregard for the truth. He therefore requests a *Franks* hearing.

2

# II.

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court noted that an affidavit supporting a search warrant is presumed valid. But the Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56. The Court explained further:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171. Here, Raschella has not made a substantial preliminary showing that DEA Diversion Investigator ("DI") Brooke Blalock included false statements in her affidavits supporting the search warrants. Thus, the Court will not conduct a *Franks* hearing.

Raschella argues that Blalock falsely contends that he performed only "cursory" examinations of an undercover Kentucky State Police Detective ("UC") before prescribing him Oxycontin on four occasions in 2007. Raschella states that the videotapes of the UC's scheduled appointments show that Raschella spent nearly forty-five minutes with the UC on February 23, 2007, forty minutes with him on March 22, 2007, twenty minutes with him on April 19, 2007, and thirty minutes with him on May 17, 2007. According to Raschella, Blalock's purpose in

3

falsely describing these office visits as "cursory" could only have been to mislead the Court into believing that Raschella was simply running a pill factory rather than a professional medical office.

Raschella's challenge relates to paragraphs 5 through 8 of the affidavits.[1] Each of these paragraphs describes the UC's appointment with Raschella in some detail. Paragraph 5, for example, reads as follows:

> On or about February 23, 2007, an undercover Kentucky State Police Detective (UC) . . . went to Raschella's office as listed above to keep a scheduled appointment. The UC was advised by office staff that Raschella would not give out a prescription without medical records as Raschella could get in trouble if he prescribed narcotics without this . . . proof. The UC paid $175.00 for the office visit and was the last patient of the day. Raschella brought the UC back into the examination room and did a cursory examination. Raschella appeared to be dozing off[] while he sat at his desk writing on the chart. The UC noticed the notes the doctor was taking were very sparse and would trail off as the doctor dozed off. This happened several times during the course of the UC's visit. Raschella's head would nod and he would wake up. The UC noticed that Raschella's eyes appeared glassy. Raschella issued a prescription for . . . (20) Oxycodone 80 mg, a Schedule II controlled substance. Raschella advised that he would give the UC the narcotics and the UC could bring back the paperwork as soon as he could.

[*See Residence*, 07-6051M; *Medical Office*, 07-6052M.] Paragraph 6 provided similar detail about the UC's second appointment with Raschella in March. Specifically, it noted that

> [t]he UC did not provide medical records as previously requested by Raschella. The UC stated he had signed a medical release and that there was an MRI done at UK, but the UC did not provide the results. The UC stated that the Oxycontin really helped him, but he had run out too soon. Raschella seemed confused as to why he had only prescribed 20 Oxycontin on the UC's last visit. Raschella wrote a new and increased prescription for (60) Oxycontin 80 mg tablets, (30) Percocet tablets (both Schedule II Controlled Substances, a Z-Pac, and hypertension medication. During the visit Raschella appeared to be under the influence of Controlled Substances. Raschella appeared to doze off on 4 or 5 occasions.

---

[1]Paragraphs 5 through 8 of the affidavits are the same.

4

> Raschella would be writing on the UC's chart and appear to fall asleep.
> Raschella's head would go down and his eyes would be closed. Raschella's eyes
> appeared to be glassy.

[*Id.*] Paragraph 7 notes that during the April appointment, the UC again did not produce any medical records and he advised Raschella that his supply of Oxycontin and Percocet ran out too soon. [*Id.*] Raschella prescribed more Percocet on this occasion, but he stated that the Worker's Comp authorities would be suspicious if he presribed more Oxycontin, so he again prescribed sixty Oxycontin 80 mg tablets. [*Id.*] Raschella had glassy eyes, appeared to have trouble thinking of certain common words and stringing some sentences together, and appeared to be under the influence during this appointment. [*Id.*] Finally, paragraph 8 provides that at the UC's last scheduled appointment, "[t]he UC advised that he ran out of the Oxycontin too soon and the Percocets were not strong enough. The UC did not produce any medical records, but advised that he had them taken at UK. Raschella advised that he knew UK to be slow. The UC received a prescription for (60) Oxycontine 80 mg tablets and (60) Roxicodone." [*Id.*] Although Raschella did not fall asleep during the appointment as he had in the past, he still appeared to be under the influence, exhibiting glassy eyes and some off balance movement. [*Id.*]

Thus, although each of paragraphs 5 through 8 of DI Blalock's affidavits described Raschella's examinations of the UC as "cursory," they also explained *why* those examinations were cursory. Namely, Raschella required no medical records, appeared under the influence, and seemed to doze off on several occasions before prescribing narcotics to the UC. As noted by the government, the term "cursory" does not refer to the length of the visit alone. Thus, on this record, Raschella's conclusory statements that DI Blalock falsely represented that his examinations of the UC were cursory based on the length of each office visit are not enough to

5

require a *Franks* hearing.

Raschella also argues that paragraph 11 of the affidavit contains deliberately false statements or statements which demonstrate a reckless disregard for the truth.[2] This paragraph provides as follows:

> A review of the prescription records of Raschella that are kept by the Commonwealth of Kentucky[] indicate that a number of patients of Raschella's have been receiving excessive amounts of schedule II controlled substances. I personally reviewed each record and the records indicate large amounts of Schedule II Controlled Substances being prescribed by Raschella to numerous individuals. Additionally, a number of these patients have been receiving large amounts of Schedule II Controlled Substances on a very frequent basis. The schedule of receipt of these amounts does not correspond with legitimate medical practice.

[*Residence*, 07-6051M.] Raschella claims that what the records referenced in paragraph 11 actually reflect are prescriptions for four separate patients of Dr. Raschella from June of 2006 through December of 2006 written monthly for amounts of controlled substances consistent with pain management for individuals suffering from a serious injury.[3] But Raschella does not support this allegation with an offer of proof, affidavit(s), or sworn or reliable statements from witnesses. *Franks*, 438 U.S. at 171. His argument in his motion to suppress that the statements

---

[2]The Court believes that this argument refers to paragraph 11 of the affidavit filed in *Residence*, 07-6051M, which is paragraph 10 in the affidavit filed in *Medical Office*, 07-6052M.

[3]This argument does not correspond with the statements contained in paragraph 11 of the affidavit in *Medical Office*, 07-6052M. Paragraph 11 of that affidavit provides that DI Blalock received certified documentation from the Kentucky Board of Medical Licensure (KBML) showing that Raschella was prohibited from prescribing, dispensing, or professionally utilizing controlled substances pursuant to an Interim Agreed Order issued March 15, 2005. [*Id.*] By Amended Interim Agreed Order issued September 6, 2005, however, Raschella was permitted to prescribe, dispense, or otherwise utilize controlled substances, on the condition that he complete additional educational requirements and maintain a log for all controlled substances prescribed. [*Id.*] An Order terminating the Amended Interim Agreed Order was issued by the KBML on December 14, 2006. [*Id.*]

in paragraph 11 of the affidavit are false, standing alone, do not constitute a *substantial* preliminary showing entitling him to a *Franks* hearing.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's request for a *Franks* hearing is **DENIED**; and

2. The Court will conduct a hearing on the remaining issues raised in the Defendant's Motion to Suppress [R. 27] on **Wednesday, March 16, 2011**, at the hour of **1:30 p.m.**, at the United States Courthouse in **Lexington**, Kentucky.

This the 8th day of March, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge